THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* OWEN STOVER, Plaintiff in Error.

*Opinion filed April 24, 1925—Rehearing denied June 9, 1925.*

1. CRIMINAL LAW—*when a signed statement is not admissible against co-defendant—reversal.* Where defendants arrested for a crime all signed the same statement of their participation in the offense but a part of the statement relates to crimes with which one of the defendants was not connected, an objection to the admission of the statement against said defendant should be sustained; but the error in admitting the statement will not reverse where the defendant is clearly proved guilty by other evidence.

2. SAME—*a judgment is not reviewed for sole purpose of finding error.* The object of the review of judgments of trial courts by courts of appellate jurisdiction is not to determine whether the record is free from error, but is to ascertain whether a just conclusion has been reached, founded upon competent and sufficient evidence, after a trial in which no error has occurred which might be prejudicial to the defendant's rights.

3. SAME—*when defendant cannot complain of error in trial.* A defendant who is fully proved guilty by his own confession, which he does not deny or attempt to invalidate, has no right to complain of error in the trial where the verdict of guilty has nothing to do with the fixing of the penalty or the grade of the crime.

4. SAME—*admission to probation rests in discretion of the trial judge—such discretion is not subject to review.* The right of the defendant to be admitted to probation rests in the discretion of the trial judge, and his decision on such question cannot be reviewed by the Supreme Court, as the statute provides for probation only where it appears to the satisfaction of the trial court that there is reasonable ground to expect that the defendant may be reformed and that the interest of society will be subserved.

WRIT OF ERROR to the Circuit Court of DeKalb county; the Hon. WILLIAM J. FULTON, Judge, presiding.

JAMES W. CLIFFE, and HARVEY GUNSUL, (OLNEY C. ALLEN, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, CASSIUS POUST, State's Attorney, VIRGIL L. BLANDING, and CHAS. F. MANSFIELD, (L. FRANK MOUDRY, and HARRIS D. FISK, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

An indictment of five counts was returned by the grand jury at the June term, 1924, of the circuit court of DeKalb county, charging Carl Johnson, William Phillips, Harry T. Sheetz and Owen Stover with burglary and larceny. The defendants were arrested, and, after motions to quash the indictment had been overruled, entered pleas of not guilty. On the day of the trial three of the defendants withdrew their pleas of not guilty and entered pleas of guilty and the trial proceeded against Stover alone, resulting in a verdict finding him guilty of larceny, fixing the value of the stolen property at $80, finding his age to be twenty years, and recommending that clemency be shown him. After a motion for a new trial had been overruled the defendant asked to be admitted to probation, and his request was referred to the probation officer, who subsequently made a report recommending admission of the defendant to probation. The State's attorney objected to the report, and the court sustained the objection and denied probation, overruled a motion in arrest of judgment and entered judgment on the verdict, sentencing the plaintiff in error to the State reformatory under the indeterminate law. The plaintiff in error has sued out a writ of error to reverse the judgment.

On Sunday night, March 2, 1924, the building of Abe Levin, in Sycamore, in which he was conducting a junk

business under the name of Sycamore Iron and Metal Company, was broken open and an acetylene welding and cutting torch, together with hose connections, regulators and tanks containing acetylene gas and oxygen gas, was taken. When Levin and his employees came to the building on Monday morning they discovered the larceny, which they reported to the sheriff, and the three co-defendants of the plaintiff in error were arrested. The plaintiff in error lived with his father at Maple Park, a town a few miles from Sycamore, where he worked in a plant of the Bowman Dairy Company. On Wednesday morning the sheriff went to Maple Park and in the barn of the plaintiff in error's parents found two revolvers,—one in Stover's automobile and the other in the hay-mow. He also found the torch and regulators,—a part of the property taken from Levin's building, which Stover had taken in his automobile and hid in the barn. He brought the torch and regulators back to the jail and in the afternoon again went out to Maple Park, arrested Stover and brought him back to jail. On the way back he asked Stover what part he took in the burglary at Abe Levin's, and Stover told him that he was there with his car; that he took the boys down to Levin's sheds; that they were all armed with revolvers, and that he stayed on the outside. He said he didn't know just what he was doing,—he was there to be a guard of some kind and he stood there as a guard. He said he had taken the torch; that they had asked him to take the torch and hide it some place, and Johnson asked him to take the gun he had,—the .45 army revolver,—and asked him if he wouldn't hide it for him; so he took the torch and the gun and took them down to Maple Park to his father's barn and hid them for him. William Joslyn, who accompanied the sheriff on this trip to Maple Park when Stover was arrested, also testified to this conversation. After returning to the county jail the State's attorney and his assistant talked with all four of the defendants in the jail in the presence of the sheriff and

317—13

Joslyn. The assistant State's attorney asked them questions and took notes about what had happened on the night of the burglary. He questioned each of them, and on the completion of the conversations the questions asked of each defendant were laid on the sheriff's desk and separated, and the assistant State's attorney then left the jail and in about half an hour came back with a typewritten form of everything that the defendants had said during the conversation. The assistant State's attorney read each paper that he had in his hand to the defendants,—one at a time,—and asked each of them if there were any corrections that might be made in the statement before he signed it. Each of the defendants signed the paper, and so did the sheriff. No promise or threat was made to secure the signing of the statement, and the State's attorney told the defendants that if there were any things mis-stated or incorrect in the statement he was about to read he wanted them to stop him from reading and he would make the correction.

The statement concerned not only the burglary of Levin's building by the four defendants but other criminal offenses committed by Stover's three co-defendants in which he was not concerned. This statement was admitted in evidence on Stover's trial against his objection. The objection to it should have been sustained, for while, so far as it was Stover's own statement, it was competent against him, it was incompetent so far as the statements of his co-defendants were concerned. Their statements were mere hearsay, not made under the sanction of an oath or subject to cross-examination, and were not admissible against Stover either as to the burglary which was the subject matter of the indictment or the other crimes mentioned in the statement.

The statement was offered as a whole and objection was made to it. A part of it was incompetent and therefore the objection should have been sustained. No offer was made of such part of the statement, only, as was competent. The overruling of the objection to this statement and its

admission in evidence are assigned as error. If there were the slightest doubt of the defendant's guilt or any conflict in the evidence as to any material matter affecting his guilt the judgment would have to be reversed for this and other errors occurring on the trial. The verdict, however, does not rest on this evidence but is amply supported by other competent, unquestioned evidence from the mouth of the plaintiff in error himself. His statement made to the sheriff, whose testimony is corroborated by Joslyn and is in no way contradicted, was that on the Sunday night of the burglary, about nine o'clock, he was at home when two of the defendants came to the house and told him that the defendant Sheetz, who was his cousin, wanted to see him over at Sycamore; that he went to Sycamore and first saw Sheetz in the restaurant; that he had one of the revolvers in his automobile that night and had it with him down at Levin's; that he went there and stood outside of Levin's place and acted as a guard; that he took a part of the stolen property home with him that night in the automobile and concealed it. These must be taken as facts proved, and they establish the guilt of the defendant of burglary and larceny.

The object of the review of judgments of trial courts by courts of appellate jurisdiction is not to determine whether the record is free from error, but is to ascertain whether a just conclusion has been reached, founded upon competent and sufficient evidence, after a trial in which no error has occurred which might be prejudicial to the defendant's rights. This defendant on his own statement was guilty of burglary. There was no evidence of a single fact tending to raise any doubt of his guilt except evidence of his good character, and this, in face of his own admission as to the facts, could not possibly raise a doubt of his guilt. Therefore the incompetent evidence, which would have been sufficient to reverse the judgment if there had been any attempt to show a valid defense, was not prejudicial to the

defendant, who did not attempt to present a defense. A defendant who is fully proved guilty by his own confession, which he does not deny or attempt to invalidate, has no right to complain of error in the trial where the verdict of guilty has nothing to do with the fixing of the penalty or the grade of the crime.

Error is also assigned on certain instructions given, but the same answer applies to this assignment of error as to the assignments in regard to admission of evidence. The confession of the defendant, which was competent, required a verdict of guilty, and this record contains no error which could reverse the judgment under such circumstances.

It is argued that the court should have admitted the defendant to probation and that the refusal to do so was an abuse of discretion. The right to admit to probation rests in the discretion of the judge hearing the case. The defendant on the trial proved, without contradiction, an excellent character for honesty and as a peaceable, law-abiding citizen. He was only twenty years old and his co-defendants were about the same age. On the application for probation it appeared that he was the third of a family of nine children, all of whom were living with their parents except the oldest daughter, who was married. He had always lived at home except one year when he was working for the Bowman Dairy Company at Pingree Grove. His wages were $39 a week, and he helped willingly, right along, with the support of the family. His father had no other income but his wages. Both he and his wife testified that without the aid of the plaintiff in error they could not get along and support the children. He had never been charged with any violation of the criminal law, and the superintendent of the Bowman Dairy Company, for which he had been working for two years, testified that he would continue to employ him if he were paroled. The statute provides that applications for release on probation may, in the discretion of

the court, be granted if it shall appear to the satisfaction of the court both that there is reasonable ground to expect that the defendant may be reformed and that the interest of society shall be subserved. Whatever might be our judgment on these questions, the determination of them is not left to us but to the discretion of the trial court, which we have no power to review.

The judgment will be affirmed.    *Judgment affirmed.*